**Lowell V. HART, Plaintiff-Appellant,**

v.

**NATIONAL HOMES CORPORATION, et al., Defendants-Appellees.**

No. 81–2169
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1982.

* Due to his death on May 15, 1981, Judge Gewin did not participate in this decision. The petition for rehearing is being decided by a quorum, 28 U.S.C. 46(d).

Larry R. Daves, Tyler, Tex., for plaintiff-appellant.

Alan M. Levy, Milwaukee, Wis., L.N.D. Wells, Jr., Dallas, Tex., for Central States.

James L. Hicks, Jr., Dallas, Tex., for Local 745.

Mike A. Hatchell, Tyler, Tex., for Nat. Homes.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Lowell V. Hart appeals a jury verdict rejecting his demands against Teamster Local 745 and National Homes, Inc. Hart was a member of the union and employed as a truckdriver by National Homes on March 5, 1975, when, following a single-day haul, he was accused of various dishonest acts,[1] for which he was discharged two days later. Hart sought the assistance of the union which demanded his reinstatement. When the company refused, a grievance investigation was commenced.

A grievance hearing was conducted at Biloxi, Mississippi on May 1, 1975. Hart was present and represented by Charles Rogers, the union business agent (later President of Local 745) and the principal union contact with National Homes on matters involving the administration of their bargaining agreement. Upon conclusion of the hearing, Hart stated that Rogers had covered his grievance fully.[2] Despite the

---

1. The specific acts which National Homes contends occasioned Hart's firing were: (1) changing times on his driver's "pay sheet"; (2) forging the driver's log to correspond with the altered on-duty time; and (3) violating dispatch policies of the company by not "logging" a required 30 minute meal break.

2. The completeness of Rogers' presentation is indicated by the fact that Hart did not produce any significant evidence at trial with regard to the propriety of his discharge that was not put

before the arbitration committee. One exception is a turnpike ticket that Hart testified he wished Rogers to introduce. In response, Rogers testified that he was unaware of the existence of the ticket. Evidently, the trial jury credited Rogers' version of the story.

Hart acknowledged the completeness of Rogers' presentation when, at the conclusion of the arbitration hearing, he was asked: "Anything further from Mr. Hart?" His response was "I can't think of another thing, sir."

adverse decision by the arbitration committee, Hart was effusive in his praise of Rogers' performance.

Hart subsequently had a change of heart and filed the instant suit, invoking Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Hart contended that the union had failed to represent him adequately in the grievance process and that National Homes had breached the labor agreement by discharging him.

The case was submitted to the jury on special interrogatories. Pursuant to the jury's findings that the union did not ignore a meritorious grievance or represent Hart in an arbitrary, perfunctory, discriminatory, or bad faith manner, the district court dismissed his suit.[3] Hart appeals, contending that (1) the trial court erred in submitting certain interrogatories to the jury and refusing others, and (2) the jury's finding that the union did not breach its duty of fair representation is not supported by the evidence. We affirm.

### Arbitration as Final

■ Access to the courts in labor relations matters is limited. National policy encourages parties to resolve their differences outside the courtroom. An underpinning of this policy encouraging arbitration in lieu of litigation is the congressional pronouncement that "final adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes . . . ." 29 U.S.C. § 173(d). Courts must not usurp the functions of the labor-management interplay, which collective bargaining pacts have reserved for the arbitration panel. *See Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The federal bench "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes."

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). The rationale for this rule may be stated simply: "plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

■ In the present case, the arbitration provisions of the collective bargaining agreement at issue states that the decision of the arbitrators "will be final and binding on both parties." The grievance committee ruled against Hart and that determination must be honored unless it is shown that the arbitration process was ineffectual because the union failed to represent Hart fairly and adequately. The jury found otherwise.

### Fair Representation

Our review is limited to determining whether the jury erred when it concluded that the union had represented Hart fairly. Hart sought a new trial but did not move for a directed verdict. Consequently, we are limited to deciding "whether the district judge . . . abused his judicial discretion in denying a new trial or whether as a matter of law the denial of a new trial was erroneous because there was an 'absolute absence of evidence to support the jury's verdict.'" *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973) (*quoting Indamer Corp. v. Crandon*, 217 F.2d 391, 393 (5th Cir. 1954)). *See Ramada Dev. Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981); *Scheib v. Williams-McWilliams Co., Inc.*, 628 F.2d 509 (5th Cir. 1980).

■ The jury's finding with respect to the union representation issue places the burden on Hart to demonstrate, if he can, that, as a matter of law, his union failed to represent him adequately. To do so, he

---

**3.** The jury was asked: "Do you find that the plaintiff has established by a preponderance of the evidence that the manner in which Local 745 represented the plaintiff in the pursuit of his grievance violated its duty of fair represen-

tation of plaintiff?" As an aid to answering this interrogatory the court detailed the union's responsibilities and defined "arbitrary," "perfunctory," "discriminatory," and "bad faith."

must show that the union's conduct was arbitrary, discriminatory, or in bad faith or that the union discharged its duties in a perfunctory manner. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Grovner v. Georgia-Pacific Corp.,* 625 F.2d 1289 (5th Cir. 1980); *Turner v. Air Transport Dispatchers' Ass'n,* 468 F.2d 297 (5th Cir. 1972). *See Wells v. Southern Airways Inc.,* 616 F.2d 107 (5th Cir. 1980); *Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123 (5th Cir. 1980); *Cox v. C. H. Masland & Sons, Inc.,* 607 F.2d 138 (5th Cir. 1979).

Hart asserts that the union job steward, who initially received his grievance, was hostile to him, siding with management. The job steward told Hart that he believed the company had acted correctly, and that Hart was in the wrong. However, at Hart's request the matter was referred to R. D. Thedford, the assistant job steward, who was Hart's friend. Hart indicates no complaint against Thedford.

Hart concedes that during his tenure as a National Homes employee, the union had represented him properly in more than 50 grievances, over ten of which involved disciplinary suspensions or discharges. In each prior instance, the union had been successful in securing Hart's reinstatement.

Shortly after his discharge, Hart met with Rogers and Thedford and went over the entire matter. This meeting lasted several hours. Rogers had several telephone conferences with the representative of National Homes and conferred with Hart, in person or by telephone, at least nine times before the grievance hearing.

 Except for relatively minor delays attendant upon the investigation of the complaint, the grievance was processed with dispatch. Hart was discharged on March 7, 1975, the grievance was filed on March 12, 1975, and the grievance hearing was held on May 1, 1975. Following the hearing, Hart was highly complimentary of Rogers, saying that he had done a "hell of a good job." Based on our review of the transcript of the arbitration proceeding, we are satisfied that this comment, albeit crude, is an accurate portrayal of Rogers' performance. Now Hart urges us to reverse the jury's finding and declare that the representation of Rogers and others was so poor that the union breached its duty of fair representation. Our review of the record compels the rejection of this request.

A union must be given certain latitude in resolving how the investigation and processing of a grievance is to be conducted. The legal question is not whether the employee is satisfied[4] with the representation (although the fact that one expresses satisfaction is relevant), or whether it was perfect. Basic fairness is the test according to *Vaca v. Sipes* and *Hines v. Anchor Motor Freight, Inc.* We are convinced that the union diligently pursued Hart's grievance complaint. *See Aquamina v. Eastern Airlines, Inc.,* 644 F.2d 506 (5th Cir. 1981); *Melendy v. United States Postal Serv.,* 589 F.2d 256 (7th Cir. 1977). As we have defined the standard before, "unions should have considerable discretion to control the grievance and arbitration procedure, subject only to a duty of fair representation," *Turner v. Air Transport Dispatchers' Ass'n,* 468 F.2d at 299. The actions by the Teamsters in handling Hart's grievance fall well within the bounds of acceptable representation.

Accordingly, the judgment of the district court is AFFIRMED.

---

4. "The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).