# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30969

HENRY JAUBERT; GAVIN W. CAMPBELL,

Plaintiffs–Appellants,

v.

OHMSTEDE, LIMITED; LOCAL 37, INTERNATIONAL BOILERMAKERS,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:12-CV-765

Before STEWART, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

PER CURIAM:*

This case arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs-Appellants Henry Jaubert and Gavin Campbell allege that shell manufacturer Ohmstede, Limited ("Ohmstede") terminated them without just cause and that this discharge was in violation of Ohmstede's collective bargaining agreement ("CBA") with union Local 37, International

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States Court of Appeals
Fifth Circuit

**FILED**
July 3, 2014

Lyle W. Cayce
Clerk

No. 13-30969

Boilermakers ("Local 37"). They further allege that Local 37 refused to process their termination-related grievances through the CBA's grievance procedure and that this refusal was arbitrary, discriminatory, and in bad faith. The district court granted summary judgment for Defendants-Appellees. For the reasons herein, we AFFIRM.

## I.

Ohmstede manufactures and repairs shells for shell and tube heat exchangers for industrial facilities like oil refineries. Plaintiffs-Appellants, members of Local 37, worked as welders in Ohmstede's fabrication plant.

As members of Local 37, Plaintiffs-Appellants were covered under the CBA between Ohmstede and Local 37. The CBA contained a three-part grievance procedure, envisioning a step-by-step escalation of grievances until resolution is reached. As the final step, "the grievance may be taken up with the Company's Human Resources Department by the Union's Business Representative."[1] Thereafter, an unresolved grievance could be taken to arbitration.

---

[1] The grievance procedure contained in Ohmstede's CBA with the union reads:

Section 2. All [] grievances shall be resolved as follows:

> Step 1. An employee, or an employee and his/her Shop Steward, must present the grievance to the employee's immediate supervisor within three (3) working days of the occurrence giving rise to the grievance.

> Step 2. If an agreement resolving the grievance is not reached at Step 1, the grievance is to be reduced to writing, stating the Article and Paragraph of the contract claimed to have been violated, and presented to the Manufacturing Manager by the Shop Steward. To be considered by the Manufacturing Manager, such written grievance must be filed within seven (7) working days following the occurrence giving rise to the grievance.

No. 13-30969

In October 2011, the plant was fabricating a shell cylinder for a British Petroleum ("BP") high pressure heat exchanger. On October 6th, Plaintiff-Appellant Jaubert filed a grievance with Local 37 regarding a weld repair he had been instructed to perform on the BP vessel, which he believed negatively affected the vessel's integrity.

On October 19th, Plaintiff-Appellant Campbell, in his capacity as union steward, hand-delivered copies of all outstanding grievances to Ohmstede's president, Bill Reid. In response, Reid threw the papers against the wall, said that grievances "were the reason why the company was going to sh*t," and made a motion as though he was urinating on union steward Frank Burns's leg to illustrate the effect the grievances had on the company and its workers. Burns and Campbell ran into Reid later that same day and Reid again stated that the employees were ruining the company, do not want to work, and only "whine and cry."

In addition to these negative remarks about grievances, Reid said that he had talked to BP about the weld in question and that BP had no problem with it. Later that day Plaintiffs-Appellants personally placed a call to Charles Cantrell, an independent consultant BP had hired to serve as BP's quality control inspector for the project. In the call, they asked if BP was indeed aware of the weld in question. Cantrell thereafter called Reid to tell him he had received calls from two unidentified employees. In response, Reid called union district manager David Hegeman and told him that the employees would be fired.

---

Step 3. If not resolved at Step 2, the grievance may be taken up with the Company's Human Resources Department by the Union's Business Representative.

No. 13-30969

On October 20th, Campbell admitted to Hegeman, Burns, and union business manager Lionel Hanna that he and Jaubert had contacted BP inspector Cantrell about the weld. Thereafter, the four men met with Reid and plant manager Paul MacKnight. Reid told the union representatives that Ohmstede's internal investigation uncovered no problem with the weld, and that thus, Ohmstede regarded the October 6th grievance as meritless. Reid indicated that Plaintiffs-Appellants had violated company policy by calling Cantrell because this constituted unauthorized contact with the customer. Specifically, Reid maintained that the conduct violated Policy 407-P, which provides that "[u]nauthorized disclosure of business secrets or confidential information" could result in discipline up to and including discharge. He told the union representatives that, accordingly, Plaintiffs-Appellants would be terminated. In response, Hegeman asked Reid if there was any way to save the jobs. Reid said there was not. Hegeman and Hanna requested Policy 407-P so that they could review it.[2]

Ohmstede terminated the Plaintiffs-Appellants' employment on the same day after the meeting. The termination notices, the company "employee conduct" personnel policy, and Policy 407-P were sent to the union. Plaintiffs-Appellants filed a grievance concerning the terminations, which Jaubert mailed to Local 37 on or about October 27th.

Local 37 reviewed the materials and decided that Ohmstede had just cause for the terminations. It found that the contact with the BP inspector

---

[2] Defendants-Appellees mentioned additional reasons for Plaintiffs-Appellants' terminations, including that Plaintiffs-Appellants failed to follow the company's chain of command and that Jaubert violated a rule prohibiting photography inside the facility. Because we conclude that Local 37 did not breach its duty of fair representation in its investigation of the terminations and its determination that Plaintiffs-Appellants were fired for just cause under Policy 407-P, we need not address any additional reasons for termination.

4

constituted an unauthorized transmission of confidential company information in violation of Ohmstede's Policy 407-P.  Accordingly, on October 31st, Local 37 denied Plaintiffs-Appellants' termination grievance.  The union's letter to the Plaintiffs-Appellants informing them of its decision read, in part:

> Please be advised that after further investigation of the grievance and looking at the company policy which was signed by you on January 03, 2006.

> Policy 407, Line P. Unauthorized disclosure of business secrets or confidential information.

> The customer has actual proof of you contacting the client and this is why you were terminated.

Having already discussed the terminations at a meeting with company management and union representatives on October 20th, the union viewed arbitration as the only remaining step, which it declined to take.  It later explained it was not willing to arbitrate because the likelihood of success was too low to warrant the cost of arbitration.

Plaintiffs-Appellants responded by filing suit claiming breach of contract by Ohmstede and breach of the duty of fair representation by Local 37.  The district court granted summary judgment to Defendants-Appellees.  Plaintiffs-Appellants timely appealed.

## II.

We review summary judgment de novo, applying the same standards as the district court.  *Antoine v. First Student Inc.*, 713 F.3d 824, 830 (5th Cir. 2013); *see also* Fed. R. Civ. P. 56(a) ("[Summary judgment is proper] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  At the summary judgment stage, "'[t]he evidence of the nonmovant is to be believed, and all justifiable

inferences are to be drawn in his favor.'" *Kolb v. Atalanta Corp.*, 167 F.3d 538, *3 (5th Cir. 1998) (unpublished) (emphasis omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam).

Plaintiffs-Appellants brought suit under Section 301 of the Labor Management Relations Act alleging breach of contract by Ohmstede and breach of the duty of fair representation by Local 37.  29 U.S.C. § 185.  A plaintiff in this type of "hybrid" breach of contract and fair representation suit must prove *both* that the employer violated the CBA and that the union breached its duty.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983); *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889 (5th Cir. 2004). "[T]he indispensable predicate for a § 301 action in this situation is a fair representation claim against the union." *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 977 (5th Cir. 1986) (internal quotation marks omitted).  Therefore, if Local 37 did not breach its duty, we need not consider whether Ohmstede breached the CBA.[3]

In order to succeed on a claim for breach of the duty of fair representation against a union, an employee must show that the union's conduct "was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process." *Landry v. The Cooper/T. Smith Stevedoring Co.,* 880 F.2d 846, 852 (5th Cir. 1989).  "Under this test, a union may not arbitrarily ignore a meritorious grievance or process it in [a] perfunctory fashion." *Id.* (citation and internal quotation marks omitted). "Thus, the duty of fair representation imposes an obligation for a union to

---

[3] Accordingly, because we conclude that Local 37 did not breach its duty of fair representation, we do not reach the question of whether Ohmstede breached its contract with Plaintiffs-Appellants.

investigate a grievance in good faith" and "prosecute a grievance with reasonable diligence unless it decided in good faith that the grievance lacked merit or for some other reason should not be pursued." *Id.* (citation and internal quotation marks omitted). A union's actions can be deemed arbitrary, discriminatory, or in bad faith if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted).

"Any substantive examination of a union's performance [] must be highly deferential. . . ." *Id.* at 78. "A union must be given certain latitude in resolving how the investigation and processing of a grievance is to be conducted." *Hart v. Nat'l Homes Corp.*, 668 F.2d 791, 794 (5th Cir. 1982). It should have "room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998). A showing of negligence or error in judgment on the part of the union in its representative capacity is not enough to sustain an unfair representation claim. *Landry*, 880 F.2d at 852; *see also Connally v. Transcon. Lines*, 583 F.2d 199, 203 (5th Cir. 1978) (finding no breach although union "may have been somewhat negligent in its handling of the grievances").

## III.

Plaintiffs-Appellants argue that, given the timeline of events, it is impossible that Local 37 conducted any investigation at all into their termination grievance. In their view, whether Local 37 investigated is a question of fact that remains disputed. This argument is unavailing. The actions constituting Local 37's investigation are not in dispute. The uncontested evidence indicates that Local 37 learned on October 19th that

unauthorized calls had been made and that whoever placed these calls would be terminated. On October 20th, Plaintiffs-Appellants admitted to union representatives that they placed the calls to Cantrell. Later that day, union representatives met with Ohmstede management to discuss the outstanding October 6th grievance. During that meeting, they requested Policy 407-P for their independent review and asked if the jobs could be saved. Plaintiffs-Appellants do not deny that the union took these actions.[4]

We cannot say these undisputed facts rise to the level of arbitrary, discriminatory, or bad faith representation. By the time the formal grievance regarding these terminations reached the union, the union reasonably determined that it had already gathered the information it needed to consider whether there was just cause for termination. In other words, it had effectively completed step three of the CBA's grievance procedure on October 20th—"tak[ing] up [the grievance] with the Company's Human Resources Department by the Union's Business Representative." The union declined to take the claim to arbitration, which we have previously held is its prerogative. *See Landry*, 880 F.2d at 852. ("An employee has no absolute right to have his grievance taken to arbitration or to any other level of the grievance process." (internal citation omitted)).[5]

---

[4] Plaintiffs-Appellants identify a host of additional facts that they contend are in dispute, precluding summary judgment below. These include, *inter alia*, the reason behind their calls to Cantrell; whether Cantrell complained or merely informed Reid of their calls; and whether Reid said during the October 20th meeting that the calls violated the company's "chain of command." Plaintiffs-Appellants further contend that the district court's failure to take this evidence into account establishes that it did not view the evidence in the light most favorable to the non-movants. We disagree. While the facts Plaintiffs-Appellants highlight may indeed be disputed, they are not material. Summary judgment here may be upheld on the agreed-upon facts recited above.

[5] Plaintiffs-Appellants also argue that their claim of breach of the duty of fair representation is supported by the fact that Local 37 denied the grievance for reasons it never conveyed to Jaubert and Campbell. Even if Local 37 indeed did not fully convey its reasons for denying the grievance, this oversight does not amount to arbitrary, discriminatory, or bad

Plaintiffs-Appellants point to the union's failure to assess whether the conversations with Cantrell contained confidential information as evidence that the investigation was perfunctory. As indicated in their letter denying the grievance, Local 37 representatives were satisfied that Policy 407-P had been violated simply because contact with the client had occurred. Taking into account the entire factual landscape and the actions the union *did* take, this imperfection in representation does not amount to arbitrary, discriminatory, or bad faith conduct. Plaintiffs-Appellants placed the calls before the October 20th grievance meeting; in other words, the internal investigation regarding the weld grievance had not yet formally concluded. A determination that Plaintiffs-Appellants violated a policy against disclosing confidential information when they called a client directly during an ongoing internal investigation is not "so far outside a wide range of reasonableness as to be irrational." *See Air Line Pilots Ass'n, Int'l,* 499 U.S. at 67 (internal quotation marks and citation omitted).

Plaintiffs-Appellants further contend that the union acted unreasonably by believing that Ohmstede terminated them for placing the call to Cantrell. They argue that, given union representatives' knowledge of Reid's anti-grievance rant, the union should have suspected an ulterior motive for the terminations. However, even accepting arguendo that Reid fired Plaintiffs-Appellants in retaliation for filing grievances, the union's determination that unauthorized contact with a customer constitutes just cause for termination

---

faith representation. *See Landry,* 880 F.2d at 852. Plaintiffs-Appellants add that, to the extent that Local 37 denied the grievance because of concerns over the cost of arbitration, this was unreasonable or arbitrary. Given that Local 37 had effectively completed step three of the CBA's grievance procedure, it reasonably viewed arbitration as the only remaining step. As we note above, declining to pursue arbitration—because of cost concerns or otherwise—does not amount to a breach of the duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 192 (1967).

remains reasonable. As noted above, the union requested and independently reviewed the policy Ohmstede claimed Plaintiffs-Appellants violated. Whether the union was correct in its determination that Jaubert and Campbell were fired for just cause is not dispositive. The union may come to an incorrect conclusion without breaching its duty. *See, e.g.*, *Marquez*, 525 U.S. at 45–46 (explaining that representation is not inadequate just because a union's decisions are "ultimately wrong"). The union simply must process the grievance in a non-arbitrary, non-discriminatory, and good faith manner, which we have determined Local 37 did.

A union's investigation need not be perfect to be adequate. *See Connally*, 583 F.2d at 202–03 (upholding a determination that union did not breach its duty where union's "attitude toward its representative duties was less than enthusiastic" and its conduct "not perfect" (internal quotation marks omitted)). Here, while Local 37's conduct may not amount to model representation, neither can it be labelled arbitrary, discriminatory, or bad faith. Accordingly, under the deferential standard of review that we apply to a union's actions, Local 37 did not violate its duty of fair representation to Plaintiffs-Appellants.

**IV.**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendants-Appellees.